UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 11-23372-CIV-GOODMAN

[CONSENT CASE]

ANITA CARROLL,

      Plaintiff,

v.

CARNIVAL CORP.,

      Defendant.

_____/

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COUNT II OF PLAINTIFF'S COMPLAINT

On her first-ever cruise, Plaintiff Anita Carroll ("Carroll") suffered two separate accidents. First, Carroll broke her elbow when she slipped and fell in an elevator. A few days later, Carroll broke her femur when she slipped and fell in a bathroom. Carroll filed the instant suit seeking compensation for both accidents because Defendant Carnival Corporation ("Carnival") was allegedly negligent. Carnival has moved for summary judgment only on count II, concerning the second incident (involving the broken femur), arguing that the undisputed facts fail to show that it was negligent.

Carroll filed her opposition response arguing that Carnival was negligent because it had a duty to provide Carroll with a *high* degree of care in light of Carroll's first incident and that disputed issues of fact remain as to whether Carnival met its

purported higher duty. Carnival did not file a reply and the time to do so has now expired.

The Court has reviewed the motion, the response, and the relevant portions of the record. As will be more fully explained below, the Court **grants** Carnival's summary judgment motion.

## I.     FACTUAL BACKGROUND

On September 20, 2010, Carroll boarded Carnival's cruise ship the "Miracle" for an eight day cruise. On the third day of the cruise, September 23, Carroll fell while entering an elevator and injured her elbow (the "First Incident"). Carroll went to the ship's medical facility and her elbow was x-rayed and examined by the ship's doctor. After his examination, the ship's doctor referred Carroll to see a doctor in Nassau, The Bahamas, the port the ship was docking in the next day (September 24). The doctor in Nassau x-rayed Carroll's elbow and determined that she had a broken elbow. The Nassau doctor then placed Carroll's elbow in a soft splint and put it in a sling. The Nassau doctor did not provide any instructions to Carroll as to what she should wear or how she should walk with her arm in a sling.

Carroll returned to the ship on September 24 with her arm in a sling. For the next few days, Carroll resumed her cruise activities by going out to dinners and catching a show. In other words, Carroll was not relegated to sitting in her cabin because her arm was in a sling. At no point did Carroll request help from the ship's crew to get around

the ship because her arm was in a sling. There is also no indication that Carroll

required, or even requested, the assistance of anyone else to perform normal daily

activities such as changing her clothes, using the bathroom, brushing her teeth, eating,

etc.

On September 26, 2010, two days after returning from receiving treatment from

the Nassau doctor, Carroll slipped and fell in one of the ship's bathrooms and broke her

femur (the "Second Incident"). Carroll described the Second Incident as follows:

> **A.** I went in and I went to the bathroom. And it was very loose and there was kind of a mess on the toilet.
>
> **Q.** Okay.
> **A.** And I cleaned myself the best I could and then I was trying to get my pants up and I couldn't. I just couldn't. So I thought to myself, I'll go out into the -- I don't know what you call it -- the place where you wash your hands and stuff.
>
> **Q.** Sure. Outside of the stall.
> **A.** Yeah.
>
> **Q.** Okay.
> **A.** And I thought I'll just lean against the --
>
> **Q.** Sink?
> **A.** The sink.
>
> . . .
>
> **Q.** Let's break it down a little bit. So you're in the stall and you were able to get out of the stall, but you were having problems getting your hands up; is that right?
> **A.** Right.
>
> **Q.** Okay. So you get over to the sink and you were going to lean against the sink?

**A.** I was going to lean against the sink, yeah.

**Q.** And pull your pants up while you were leaning against the sink?
**A.** Yeah.

**Q.** Okay. So what happened?
**A.** And I guess I lost my balance and I fell and I hit against the front of -- 'cause it was an L-shaped sink type of thing, and I hit the front side and that's when I broke my femur.

The parties **agree** that Carroll's deposition testimony (quoted above) constitutes **all** of the relevant facts explaining how she injured herself in the Second Incident.

Carroll filed the instant suit on September 26, 2011 alleging that Carnival's negligence caused the First and Second Incidents (counts I and II respectively). Carnival is now moving for summary judgment on the Second Incident (count II) because, it argues, it was not negligent.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, depositions, affidavits and exhibits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue of fact is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods, Inc.*, 121 F.3d

642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Allen*, 121 F.3d at 646.

On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party and determine whether the evidence could reasonably sustain a jury verdict for the non-movant. *Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. Thus, if "conflicts arise between the facts evidenced by the parties, we [must] credit the nonmoving party's *version." Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (emphasis in original) (internal citations and quotations omitted).

## III.   ANALYSIS

### A.  <u>The Applicable Standard of Care</u>

To prevail on her negligence claim for the Second Incident, Carroll must show that: (1) Carnival owed her a duty; (2) Carnival breached that duty; (3) Carnival's breach was the proximate cause of the Second Incident; and (4) she suffered damages. *Weiner v. Carnival Cruise Lines*, No. 11-CV-22516, 2012 WL 5199604, at *2 (S.D. Fla. Oct. 22, 2012) (order granting defendant summary judgment in cruise ship slip and fall). *See also Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (discussing elements of negligence claim in the context of a motion to dismiss).

General maritime law, as developed by federal courts, applies to an alleged tort committed aboard a ship. *Cook v. Royal Caribbean Cruises, Ltd.*, No. 11-20723-CIV, 2012

WL 1792628, at *2 (S.D. Fla. May 15, 2012) (citing *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989)). The duty a ship owner owes to its passengers is "'reasonable care under the circumstances of each case.'" *Cook,* 2012 WL 1792628, at *2 (quoting *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 632 (1959) and citing *Gibboney v. Wright,* 517 F.2d 1054, 1059 (5th Cir. 1975)). A carrier by sea is not an all-purpose insurer of its passengers' safety. *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1334 (11th Cir. 1984), *cert. denied* 470 U.S. 1004 (1985). A carrier is "liable to passengers . . . only for its negligence." *Id.* at 1334.

Carroll argues that under the circumstances the applicable standard is not reasonable care. Rather, Carroll asserts that because Carnival had knowledge of Carroll's physical disability after the First Incident (i.e., her arm was in a sling), Carnival had a duty to provide her with a *higher* degree of care than the reasonable standard of care. According to Carroll, under this standard, Carnival should have provided her with whatever special assistance and warnings were necessary to prevent Carroll from suffering another injury. These warnings or special assistance may have included, among other things, telling Carroll what clothes to wear and/or assigning her a female crewmember to assist her in the bathroom. Carroll argues that summary judgment is not appropriate because there are disputed issues of fact as to whether Carnival met this standard. To support her argument, Carroll cites to *Alpert v. Zim Lines,* 370 F.2d 115, 116 (2d Cir. 1966).

In *Alpert*, the plaintiff, an elderly woman with a noticeable limp because of a prior accident that left one leg shorter than the other, boarded defendant's cruise ship. *Id.* During the cruise, the plaintiff had a noticeably hard time getting around the ship but did not notify the ship's crew that she needed assistance. *Id.* Due to rocky weather conditions, the plaintiff fell and was injured. On appeal, the Second Circuit first stated that the applicable standard of care for carriers is "a high degree of care and whether negligence exists may depend upon a passenger's special needs and the ship's knowledge thereof." *Id.* (internal citations and quotations omitted). The appellate court then reversed because there was a genuine issue of material fact as to whether the ship's staff had notice of the plaintiff's physical disability.

But in *Rainey v. Paquet Cruises, Inc.*, 709 F.2d 169, 172 (2d Cir. 1983), the Second Circuit clarified its language in *Alpert*. Specifically, the Second Circuit followed the old Fifth Circuit's lead and found that the applicable standard in cruise ship passenger injury cases is reasonable care under the circumstances, stating that "there is no sound reason to require that a carrier exercise a high degree of care for those trifling dangers which a passenger meets in the same way and to the same extent as he meets them daily in his home or in his office or on the street." *Id.* at 171-72. Thus, *Alpert* provides no support for Carroll's argument that a higher degree of care exists for everyday dangers on a ship, such as a slip and fall in a bathroom.

In sum, whether a carrier is negligent, or not, depends on if it acted reasonably under the fact-driven circumstances of each case. To be sure, a carrier with knowledge of a passenger's abnormal physical disability may have to do more under the reasonable care standard toward that passenger than it would toward a passenger with no physical disability. *See, e.g., S. Pac. Co. v. Buntin*, 94 P.2d 639, 641 (Ariz. 1939) (finding that the railroad had no duty to plaintiff because it did not know of plaintiff's bad eyesight in dropping him off in dimly lit station); *Sumpter v. Tamiami Trail Tours, Inc.*, 123 So. 2d 732, 733 (Fla. 2d DCA 1960) (affirming judgment for bus line because it did not know that elderly passenger needed assistance to board the bus). But a carrier with knowledge of a passenger's injury does not somehow get subjected to a completely new and heightened standard of care. Instead, the applicable rule is simply the unremarkable and traditional reasonable care standard, the specifics of which vary with the facts of each particular case.[1]

### B. There is Nothing to Show That Carnival was Negligent

Carroll's argument is that after the First Incident, Carnival should have done more to prevent the Second Incident from happening. The problem for Carroll is that there are no facts, let alone genuine material facts in dispute, that show that Carnival was negligent in connection with the Second Incident.

---

[1] In paragraph 20 of her Complaint (which concerns the Second Incident), Carroll alleges that Carnival owed her a duty to provide "**reasonable care** under the circumstances." (emphasis supplied).

First, there is nothing in the record that indicates that Carnival should have been on notice that Carroll needed assistance walking around the ship or going about her daily routine after the First Incident. Indeed, the evidence is to the contrary – Carroll resumed her activities with her arm in a sling without assistance from ship employees. For example, there are no facts in the record that: (1) Carroll asked the ship's crew for assistance; (2) Carroll had to rely on others to get around or perform her daily routine; (3) Carroll experienced difficulty using the bathroom aboard the ship from September 24 to September 26 (the date of the Second Incident); (4) Carroll was unable to use the bathroom on her own while her arm was in a sling from September 24 to September 26; or (5) it was obvious Carroll could not walk because her arm was in a sling. In fact, Carroll conceded that she was still able to walk around and enjoy the cruise by going to dinners and attending a show. And there is nothing in the record to indicate that Carroll had any difficulty performing her daily routine.

Thus, even if *Alpert* remains good law in the Second Circuit (which it appears it is not) and even if it was binding in this Circuit (which it is not), Carroll's case is easily distinguishable from the plaintiff's situation there. Unlike in *Alpert*, where it was obvious the plaintiff had a noticeable limp and was having difficulty getting around, there is nothing in the record here showing that it was obvious that Carroll was having a hard time getting around or encountering difficulty performing her daily activities because of her physical condition (her arm in a sling).

Second, in addition to not showing that Carnival was on notice that she needed assistance after the First Incident, Carroll has not alleged that Carnival was negligent because of the condition of the bathroom sink she leaned against. For example, there is no evidence, let alone an allegation, that the sink was loosely bolted to the wall, or that there was water on the floor underneath the sink which caused her to slip, or that the sink was defectively designed. Indeed, there is no evidence to suggest that anything about the sink or the bathroom was deficient or dangerous.

In sum, there is nothing in the record which would support a finding that Carroll's Second Incident was caused by Carnival's negligence under the reasonable care standard.

## IV.   CONCLUSION

Although Carroll's injury from the Second Incident is "surely unfortunate, liability cannot rest on sympathy alone." *See Weiner*, 2012 WL 5199604, at *6 (internal citations omitted). Carnival is not the insurer of the safety of its passengers and does not become liable to a passenger merely because an accident occurs. Here, for the reasons explained above, Carroll has failed to present any evidence creating a genuine issue of material fact that Carnival's negligence caused her injury in the Second Incident.

Accordingly, it is hereby **ORDERED and ADJUDGED** that the Defendant's

Motion for Summary Judgment on Count II is **GRANTED.**

**DONE AND ORDERED** in Chambers, Miami, Florida, this 2nd day of May,

2013.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All Counsel of Record